IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DALE TAYLOR, et al., etc.,      )
                                 )
            Plaintiffs,          )
                                 )
    v.                           )   No.  04 C 6814
                                 )
CAROL L. ADAMS, Secretary of     )
Illinois Department of Human     )
Services, et al.,                )
                                 )
            Defendants.          )

## MEMORANDUM OPINION AND ORDER

This class action was one of several cases earlier reassigned to this Court's colleague Honorable Harry Leinenweber on relatedness grounds. After a two-week bench trial, Judge Leinenweber issued a memorandum opinion and order in the lowest numbered class action, Hargett v. Adams, No. 02 C 1486, 2005 WL 399300 (N.D. Ill. Jan. 14), and the other related actions (including this one) were then reassigned to the judges to whose calendars the random assignment system had originally delivered them.

After some further activity in this case, a number of motions have been filed and disposed of—now only one, a motion to dismiss Count I of plaintiffs' First Amended Complaint ("FAC") brought by defendants Carol Adams, Thomas Monahan, Shan Jumper and Lea Chankin (collectively "Movants"), remains pending. It has been fully briefed by the parties and is ripe for decision.

Count I charges that Movants' employment of polygraph

examinations as a conclusive determinant in deciding whether or not someone committed under Illinois' Sexually Violent Persons Act ("Act") is to be recommended to the state court system for discharge violates the class members' constitutional rights. Movants claim that the <u>Hargett</u> opinion upheld the constitutionality of the use of polygraph examinations in such a manner that the principles of claim preclusion or issue preclusion[1] or both foreclose the plaintiff class' pursuit of Count I. Plaintiffs dispute that contention, and this opinion addresses the parties' differences.

As always in this area of law, it falls to the second court to determine what the first court did or did not do. To that end the analysis here must look to Judge Leinenweber's Findings 54 through 58 (<u>Hargett</u> at *11) and to this Conclusion of Law 24 (<u>id</u>. at *19) dealing with the subject:

> In light of these challenging tasks, the Court finds that the treatment program and delivery of services at the TDF adequately meet constitutional requirements. Specifically, the TDF's use of arousal reconditioning and polygraph techniques are well within the bounds of professional judgment. While arguably the TDF may have over emphasized these techniques in its treatment regimen, there is certainly widespread acceptance and use of these techniques in the sex offender treatment

---

[1] This Court regularly employs those terms rather than the old label of "res judicata," in part because all too many cases have employed the latter label for both types of preclusion, thus muddying the analytical waters. For a good explanation of the difference between the two more precise preclusion concepts, see <u>Migra v. Warren Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 77 n.1 (1984).

2

community. Thus, it cannot be said that the TDF's use of such techniques is a substantial departure from accepted practices and standards. See Youngberg, 457 U.S. at 323.

As the earlier-cited footnote from Migra teaches, if Judge Leinenweber had in fact dealt with the issues that are posed by Count I, plaintiffs could not advance them in this action as a matter of issue preclusion, while if he could have dealt with those issues (even though he did not do so), plaintiffs would be barred by claim preclusion. This opinion will treat with those questions in that order.

But before doing so, this Court is constrained to remark on defense counsel's effort to paint plaintiffs into an analytical corner by a repeated reference to this statement that plaintiffs' counsel have made at their Mem. 5:

> Shortly after the decision [in Hargett], TDF [the Joliet Sexually Violent Persons Treatment and Detention Facility] immediately went back to their old ways.[2]

But that effort does not gain force through repetition. When the allegations in Count I are credited (as they must be) together with favorable inferences, plaintiffs are saying that events since Judge Leinenweber's Hargett opinion reveal that despite the promised reforms that had been adopted just before issuance of

---

[2] [Footnote by this Court] That full quotation, or a quotation-marked reference to "old ways," appears no fewer than five times in Movants' Reply Memorandum (R. Mem. 1, 4 (twice) and 5 (twice)). And those direct quotations are supplemented by a series of references that repeat the same point through slightly modified locutions.

3

that opinion, what has happened is (1) that adverse polygraph examination results are now used as a conclusive bar to the release of any class member and (2) that no real evaluative examination of such adverse polygraph results takes place.

On that score, here are the allegations in (or incorporated into) FAC Count I that are relevant to the consideration of issue preclusion and claim preclusion:

> 29. Defendants treat polygraph results as if they are definitive.
>
> \* \* \*
>
> 32. Defendants have no policy or procedure for residents to contest inaccurate polygraph test results.
>
> \* \* \*
>
> 61. Although 20 Ill. Adm. Code 1905.320(b) states that "[a] failed polygraph examination should not be used as the sole reason to deny successful completion of treatment," in all reality, at the SVPTDF, failure to take or pass a polygraph test acts as a bar to successfully completing treatment and ultimate release.
>
> 62. The polygraph requirement in Phases II to IV of the SVP treatment plan is a substantial departure from accepted practices and therefore is unconstitutional because it conditions release upon the results of an unreliable test with no regard for the possibility of inaccurate results.

True enough, Judge Leinenweber's earlier-cited Findings 54-58 and Conclusion 24 in <u>Hargett</u>, though scarcely a ringing endorsement of the polygraph in terms of its reliability (something that is hardly surprising), found its use by Movants permissible. To that extent plaintiffs are foreclosed from advancing an opposite

4

position, so that if all that Count I asserted was the lack of wide acceptance (FAC ¶28) and the inaccuracy (FAC ¶31) of polygraph examinations, issue preclusion would bar plaintiffs' current claims.

But as already indicated, the target of Count I goes well beyond those limits to advance new assertions that as applied during the post-Hargett period, polygraph examinations are not vetted to confirm their reliability and are used as an absolute bar to plaintiffs' release. In that post-Hargett incarnation, such claims are obviously not foreclosed by issue preclusion, and because the claims are based on asserted facts that did not exist when Judge Leinenweber ruled, a claim preclusion defense does not lie either (see, e.g., such cases as Doe v. Allied-Signal, Inc., 985 F.2d 908, 913-14 (7th Cir. 1993) and Spiegel v. Continental Ill. Nat'l Bank, 790 F.2d 638, 645-46 (7th Cir. 1986); and cf. Herrmann v. Cencom Cable Assocs., Inc., 999 F.2d 223, 225-27 (7th Cir. 1993)).

It should be emphasized, of course, that plaintiffs are not home free by reason of this ruling. It remains to be seen whether they can deliver as advertised, or whether on further development their current Count I claims turn out to be embraced within the Hargett rulings so as to be foreclosed as a matter of law. But for the present, on the basis of the FAC Count I pleading alone, Movants' motion to dismiss that count is denied,

5

and Movants are ordered to answer that count on or before July 14, 2006.

				*[signature]*
				Milton I. Shadur
				Senior United States District Judge

Date:   June 28, 2006